WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Dulce Maria Haros,<br><br>　　　　　Defendant. | No. CR-22-02343-001-TUC-RM (BGM)<br><br>**ORDER** |

Pending before the Court is Defendant's Emergency Motion to Correct Sentence Resulting from Clear Error. (Doc. 47.) The Court will deny the Motion for the following reasons.

**I.   Background**

Defendant pleaded guilty to Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (Doc. 28.) The applicable guideline imprisonment range is 46-57 months.[1] (Doc. 37 at 9, 12.).[2] The guideline term of supervised release is one to three years. (*Id.* at 9, 12.) U.S. Probation recommended Defendant serve a sentence of 24 months imprisonment followed by a three-year term of supervised release. (*Id.* at 12.)

On August 23, 2023, this Court sentenced Defendant to a term of imprisonment of

---

[1] The applicable guideline range accounts for the quantity of fentanyl involved in the offense, as well as Defendant's minor role, her acceptance of responsibility, and her placement within Criminal History Category I. (Doc. 37 at 12.)
[2] All record citations herein refer to the page numbers generated by the Court's electronic filing system.

16 months with credit for time served, followed by a five-year term of supervised release. (Doc. 45 at 1.) The Court's Judgment directs Defendant to comply with the mandatory and standard conditions of supervision adopted by this Court in General Order 17-18. (*Id.* at 2.) The Court also imposed special conditions, including that Defendant must reside at and participate in a residential reentry center or similar program for up to 180 days if "there is no pre-approved residence in the United States," and "must not travel outside the state of Arizona without the Court's prior approval." (*Id.* at 4.)

Defendant is a 19-year-old U.S. citizen. (Doc. 37 at 2.) She is a single mother to a two-year-old daughter, a U.S. Citizen, who has resided with Defendant's mother in Mexico since Defendant's arrest. (*Id.* at 7.) Defendant avers that her mother "does not have permission or a visa to enter the United States." (Doc. 47 at 2.) Defendant was raised in Tucson until she was seven, when her family moved to Sonora, Mexico, where she lived until her arrest in the instant offense. (*Id.* at 6-7.) Defendant does not hold a high school diploma (Doc. 37 at 2), and she was unemployed before her arrest (*id.* at 8). Defendant reported that she "smuggled the fentanyl across the United States and Mexico border to repay a drug debt that her brother owed the cartel in Mexico." (*Id.* at 4.)

**II.   Discussion**

In Defendant's Emergency Motion, Defendant contends that the Court clearly erred by failing to provide advance notice of a "non-standard special condition of supervised release, not proposed in the PSR or requested by the government, contrary to the requirement do so." (Doc. 47 at 1.) Specifically, Defendant attacks the condition of supervised release that requires her to obtain the Court's permission before traveling to or residing in Mexico. (*Id.*) Defendant requests that the Court "correct the error by convening a hearing…and ruling on [Defendant's] objections." (*Id.* at 3.)

Defendant objects to the condition of supervised release on three bases. First, Defendant argues that the condition is "procedurally and substantively erroneous" because (1) the Court "did not make the heightened findings necessary to impose the condition that so dramatically affects [Defendant's] significant liberty interest in associating with her

child, mother, and siblings in Mexico," and (2) the condition "is not 'reasonably related' to the goals of deterring [Defendant] from future crimes, protecting the public from her, or furthering her rehabilitation." (*Id.* at 5.) Next, Defendant argues that "the geographic restriction of requiring [Defendant] to move to a different country curtails much more liberty than is reasonably necessary to deter, protect[,] and rehabilitate." (*Id.* at 7.) Finally, Defendant claims that "[t]he conditions here are unconstitutionally vague because they fail to answer the questions of the duration of the residency requirement in the United States." (*Id.*)

"Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35.  In *United States v. Wise*, the Ninth Circuit held that when a specific "condition of supervised release is not on the list of mandatory or discretionary conditions in the sentencing guidelines, notice is required before it is imposed, so that counsel and the defendant will have the opportunity to address personally its appropriateness."  391 F.3d 1027, 1033 (9th Cir. 2004).  However, a defendant "is considered to have advance notice of any condition that is contemplated by the sentencing guidelines." *United States v. T.M.*, 330 F.3d 1235, 1242 (9th Cir. 2003).

Here, the standard conditions of supervision should have put Defendant on notice that she would need to request permission before traveling to or residing in Mexico. Standard Condition No. 3 of the U.S. Sentencing Guidelines provides that "the defendant shall not knowingly leave the federal judicial district where he or she is authorized to reside without first getting permission from the court or the probation officer." U.S.S.G. § 5D1.3(c)(3); (Doc. 45 at 2).  The Court authorized Defendant to reside within Arizona, and thus Standard Condition No. 3 requires Defendant to obtain permission before traveling to or residing in Mexico.  Furthermore, Standard Condition No. 6 provides that Defendant "must allow the probation officer to visit [Defendant] at any time at [Defendant's] home or elsewhere…" U.S.S.G. § 5D1.3(c)(6); (Doc. 45 at 3).  A probation officer cannot visit Defendant's residence in another country.  Because the condition of supervision at issue is contemplated by the sentencing guidelines, *Wise* is inapplicable.

It is also significant that Defendant did not object, at the time of sentencing, to the condition prohibiting her from traveling to or residing in Mexico—or to insufficient notice of that condition—despite the Court providing ample opportunity to raise objections. *See United States v. Watson*, 582 F.3d 974, 981 (9th Cir. 2009) (defendant's challenge to a special condition of supervised release based on insufficient notice reviewed for plain error, rather than de novo, because counsel did not object on the grounds of insufficient notice at sentencing). As relevant here, the Court and Defendant had the following exchanges:

> The Court: You are not to travel outside of the state of Arizona unless you have the Court's permission. Do you understand?
>
> The Defendant: Yes.
>
> The Court: And I will give you permission once I see that you're enrolled in school, for example, or that you have a place to live, that you have employment. Then I'll start allowing you to travel into Mexico. Understand?
>
> The Defendant: Yes.
>
> …
>
> The Court: Ms. Haros, did you understand your sentence?
>
> The Defendant: Yes.
>
> …
>
> The Court: Was there anything further, Ms. Vietor?
>
> Ms. Vietor: No, your Honor. Thank you.

(Doc. 47-1 at 16-17.) Had Defendant raised an objection at sentencing, the Court, defense counsel, and the Government could have addressed Defendant's concerns.

Assuming, arguendo, that the Court was required to make special findings on the record to support a special condition, the Court did so. In *United States v. Wolf Child*, the Ninth Circuit held that when a court imposes a special condition that implicates a significant liberty interest, the court is required "to make special findings on the record supported by evidence in the record, that the condition is necessary for deterrence, protection of the public, or rehabilitation, and that it involves no greater deprivation of liberty than reasonably necessary." 699 F.3d 1082, 1087 (9th Cir. 2012). Here, the Court heavily weighed the importance of deterrence and rehabilitation in imposing Defendant's

sentence.

"Separating a convicted felon from negative influences in [her] prior life is reasonably related to the permissible goals of deterrence and rehabilitation and is a common purpose of supervised release." *United States v. Watson*, 582 F.3d 974, 983 (9th Cir. 2009); *United States v. Ross*, 476 F.3d 719, 722 (9th Cir.2007) ("Special conditions may seek to prevent reversion into a former crime-inducing lifestyle by barring contact with old haunts and associates, even though the activities may be legal." (internal quotation marks omitted)). In Defendant's case, the Court considered that this crime was not aberrant behavior because Defendant had done this same crime before. The Presentence Investigation Report ("PSR") specifies that "[i]n aggravation, case information reflects [Defendant] was involved with smuggling fentanyl on one other occasion in which she was not prosecuted." (Doc. 37 at 13.) During sentencing, defense counsel noted that Defendant "admitted that she had previously done one run or tried to do a run." (Doc. 47-1 at 8.) The Government also expressed concern at sentencing that while the instant offense was "motivated by a family member in trouble, two years ago, it wasn't. And so she's familiar with the advantage or the profiting or the expediency of benefit that comes from smuggling fentanyl." (*Id.* at 10.)

After considering Defendant's past conduct, the Court expressed the importance of general deterrence and of considering that Defendant was "well aware" of what she was doing. (*Id.* at 14.) While the Court recognized Defendant's relatively young age, the Court also emphasized that it must consider that Defendant is "not a naïve 19-year-old." (*Id.*) Moreover, Defendant argued that she committed this crime because she was paying off her brother's debt to the cartel. (Doc. 37 at 4; Doc. 47-1 at 6-7.) The Court considered that she could be targeted in the future if she remained in the same town. (*See* Doc. 47-1 at 13 (in which the Court explains that "living in Mexico and having a good time in Mexico is only going to bring you back."))

The Court considered the 3553(a) factors, specifically rehabilitation. Defendant is a single mother of a US citizen; she is 19, without a high school education, and without

employment in Mexico. (Doc. 37 at 2, 8.) While the Court empathized with the Defendant's desire to continue living in Mexico, it also heavily weighed Defendant's need to "grow up and get a job that pays well," "get a high school diploma or a GED," and exercise her "privilege of working and living here in the United States," particularly in light of her young daughter. (Doc. 47-1 at 13.) Based on the foregoing, the Court concluded that requiring Defendant to reside in Arizona and seek permission before traveling to Mexico was reasonably related to the goals of rehabilitation and deterrence and no broader than legitimately necessary to serve those purposes.

The Court also considered the 3553(a) factor of avoiding sentencing disparities among similarly situated defendants. Had Defendant raised an objection to her being supervised and a preference for living in Mexico with all conditions of supervision suspended or decreased, the Court would have sentenced her to a greater term of imprisonment. Importing fentanyl is a very serious offense, and Defendant's guideline sentencing range was 46-57 months imprisonment. (Doc. 37 at 12.) For a similarly situated defendant who committed the same offense but was to be deported and not subject to supervision in the United States, the Court would have imposed a sentence within the plea agreement without a significant variance. Given that Defendant did not object to living across the border from her family and wanted to obtain a high school equivalency degree or vocational degree, the court imposed a sentence three times less than what a defendant not subject to supervision would have received. It is unfortunate that Defendant did not raise her objection at the time of sentencing and instead misled the court into believing that she wanted to work on her rehabilitation. Had the Court known that Defendant objected to being actively supervised, the Court would not have given her the benefit of the variance.

Finally, the restriction on visiting Mexico is not absolute or vague. The Court ordered Defendant to "find a place to live" (Doc. 47-1 at 15) and "to maintain full-time employment or attend school full-time or a combination of the two." (Doc. 47-1 at 16). At sentencing, the Court specified that it would permit Defendant to travel to Mexico "once I see that you're enrolled in school, for example, or that you have a place to live, that you

have employment. Then I'll start allowing you to travel to Mexico." (Doc. 47-1 at 17.) As is standard, the Court will evaluate Defendant's request to travel and reside in Mexico based on Defendant's progress towards those stated goals.

The Ninth Circuit has "repeatedly upheld residency and travel conditions aimed at keeping a convicted defendant away from circumstances that might lead [her] to offend again." *Watson*, 582 F.3d at 983. The Court's intention in the condition at issue is to remove Defendant from the environment that has not served her well and to allow her an opportunity to start fresh. Allowing Defendant to return to the area harboring the same negative influences as before is not likely to accomplish that goal. That Defendant may obtain permission from the Court to visit Mexico helps lessen the restriction's severity. Based on the foregoing, the Court will deny Defendant's Emergency Motion to Correct Sentence Resulting from Clear Error. (Doc. 47.)

**IT IS ORDERED** that Defendant's Emergency Motion to Correct Sentence Resulting from Clear Error (Doc. 47) is **denied**.

Dated this 5th day of September, 2023.

_____
Honorable Rosemary Márquez
United States District Judge